*R. B. Carpenter* and *D. J. Haynes,* for appellants.

---

## GRAY *v.* HINTON *et al.*

*(U S. Circuit Court, District of Nebraska—January Term, 1881.)*

1. CONTRACT. ENTIRETY. No precise rule can be given, in a given case, by which the question whether a contract is entire or separable, can be determined. Like most other questions of construction, it depends upon the intention of the parties, to be gathered from what appears upon the face of the contract and surrounding circumstances.

2. SAME. SAME. Where certain parties signed an agreement declaring that they would pay to a railroad company or its assigns $60,000, to be paid

in installments, one portion when a railroad should be graded through two precincts named, and another portion when the road should be finished, the consideration for the promise being declared to be the construction of the road through said precincts,—*held*, that the parties signing the agreement were not liable on the contract for the first installment, without an allegation in the petition, that the company have finished or offered to finish the road.

3. CONTRACT. MUTUALITY. The contract above described shows no mutuality. The railroad company was not bound by it. It amounted to a proposition by defendants, which could be made mutual and obligatory only by an acceptance on the part of the company.

4. SAME. SAME. WHAT AMOUNTS TO AN ACCEPTANCE. The performance of the contract by the railroad company would amount to an acceptance, and avoid the objection of want of mutuality; but part performance and a failure or refusal to complete the performance, did not have that effect.

On demurrer to petition.

The facts, as they appear by the allegations of the petition, are as follows:

The Nebraska Railway Company was a corporation organized for the purpose of constructing a road from Brownsville to Lake City. The precincts of Ohio and Falls City, in the county of Richardson, had voted to subscribe for a certain amount of the capital stock of said railway company, for the purpose of aiding the construction of said railroad. The railway company contracted for the construction of the road through the said precincts of Ohio and Falls City. Litigation being threatened by parties adverse to the policy of granting aid by the precincts above mentioned, the defendants in this suit, one hundred and fifty in number, signed the contract upon which this suit is brought. The contract, in so far as it is material to be considered, is as follows: The consideration for its execution on the part of the defendants is stated to be "the sum of one dollar to us in hand paid by the Nebraska Railway Company, and the advantages thereafter to accure by the construction of said railway through the precincts of Ohio and Falls City." And the defendants agree as follows: "To pay jointly and severally to the Nebraska Railway or its order the sum of sixty-five thousand dollars in lawful money of the United States of America, to be paid in installments, as follows, to wit: Ten thousand five hundred dollars thereof when said railway company, have graded its road-bed and built its culverts through the precinct of Ohio, according to the terms of the foregoing proposition; thirty-five thousand dollars thereof when

the said Nebraska Railway Company shall have graded its road-bed and built its culverts through the precinct of Falls City, according to the terms of the foregoing proposition; nineteen thousand five hundred when said Nebraska Railway Company shall have graded, tied and ironed its roadway through the precincts of Ohio and Falls City, according to the foregoing propositions. Each installment of which shall be truly and promptly paid."

The "foregoing proposition" referred to in this agreement, among other things, provided that the railroad should be constructed before December 1, 1876. The petition alleges that the grading was completed in accordance with the contract; but there is no allegation that the road has ever been completed. The time for the completion of the road, according to the terms of the agreement, had elapsed before the commencement of this suit. The defendant files a general demurrer to the petition, under which he insists, first, that the contract is not binding on the defendants for want of mutuality; second, that the contract is an entirety; and as the plaintiff has commenced this action after the expiration of the time within which the railroad company was to have completed the railroad, he cannot recover without alleging and proving a full performance of the contract on the part of the company, or in other words, that it has finished the road; third, that the plaintiff cannot recover without alleging performance of all the stipulations of the contract to be performed upon the part of the railroad company.

McCRARY, Circuit Judge. The demurrer raises the question whether suit can be maintained on the contract upon the facts disclosed by the petition. The plaintiff sues after the expiration of the time within which, by the terms of the contract, the road was to have been finished. It is alleged that the grading was completed according to the contract, but it is not alleged that the road was finished. The question is, whether under the contract, plaintiff can recover for the grading without alleging that he has finished the road, or offering some sufficient excuse for his failure to do so; or, in other words, we are to consider whether the agreement to do the grading was a contract separate and distinct from, and independent of the agreement to finish the road, so that the plaintiff can sue upon the contract and recover for the grad-

ing without alleging compliance, or readiness to comply, with the other part of the agreement. Speaking of the "entirety of contracts," Mr. Parsons says: "The question whether a contract is entire or separable is often of great importance. Any contract may consist of many parts; and these may be considered as parts of one whole, or as so many distinct contracts entered into at one time, and expressed in the same instrument, but not thereby made one contract. No precise rule can be given by which this question in a given case may be settled. Like most other questions of construction, it depends upon the intention of the parties, and this must be discovered in each case by considering the language employed and the subject matter of the contract." 2 Pars. Con., 517.

From what appears upon the face of this contract and surrounding circumstances, we are to determine whether it was the intention of the parties to make one contract for the construction of a railroad, or two separate contracts, one for the grading and the other for the bridging, tieing and ironing of the roadway through the precincts of Ohio and Falls City.

It seems pretty clear that the subject matter of the contract was an entirety, to wit: A completed railroad. The case is not like many we find cited in the books, in which two or more separate and distinct articles of property are sold and conveyed by a single instrument, for separate and distinct prices, at one and the same time. In such cases it often appears that the purchase of each article was a separate and distinct transaction, and intended to be so regarded by the parties to the contract. There is in such cases no necessary connection between several articles sold and conveyed. There is nothing from which it can be inferred that it was not the intention of the purchaser to secure one without also securing the others. The case before us, however, is quite different. It cannot be supposed that the defendants would have employed the railroad company to do the grading alone, without it had at the same time agreed to go on and complete the road. The contract itself declares that the consideration for the contract, on the part of the defendants, was the benefits they were to receive by the construction of the road through the two precincts named. Suppose the railroad company, or its contractors, after completing the grading had failed or refused to go on and complete the road upon the demand of the defendants, would

it be contended that the plaintiff, under such circumstances, could maintain an action upon the contract? This is probably the test. (See *Robinson* v. *Green*, 3 Met., Mass., 159.) If it were alleged in the petition that the railroad company or the contractors completed the grading and were ready, able and willing, to go on and finish the road; that they offered to do so, and were prevented by the act or fault of defendants, a very different question would arise; but an allegation that the grading was completed, without more, is insufficient, because it is manifest that the defendants did not intend to bind themselves to pay for grading, and leave the contractors at liberty to finish the road or not at their option.

The parties must have understood that the defendants were binding themselves to pay a large sum of money to secure the construction of the railroad through the precincts in which they resided and held property. If the proposition, upon which this action is based, to wit: That the defendants were to pay the price named for the grading, whether the road was completed or not, had been suggested at the time of the execution of the contract, no one of the defendants would have assented to it. They undoubtedly regarded the contract as an entirety. Such was the intention; and the construction of the contract as to its being several or entire depends upon the intention of the parties to it.

But, independently of this consideration, there can, I think, be no doubt upon another question which is presented by this record. The contract itself shows no mutuality. The defendants bound themselves to pay a certain sum of money, provided plaintiff's assignor, the railway company, would complete a certain railroad; but there is nothing in the contract to bind the company to complete the road. The performance of the contract by the railroad company would avoid this objection. The rule is, that where one party agrees to pay a certain sum of money if another party will do certain acts, the latter is not bound; but the agreement of the former may be considered as a request to the latter to do the acts named, and the doing of the acts is an assent, and the promise thereby becomes mutual and obligatory. But this case presents the question whether a performance of a part of the acts specified, and a failure to perform another part, will answer the objection that there is no mutuality. The rule is, that performance is an assent to the terms proposed; but I know of no authority for the proposition that part performance will amount

to an assent. See 13 Ohio St., 94; where it is distinctly held that "this rule does not appear to be applicable where the act done only constitutes a part of the consideration, and shows no assent to the terms of the contract." The performance by the party to whom the offer is made takes the place of a formal acceptance of a proposition to contract; but a part performance, without an offer to make full performance, is not an acceptance, no more than an acceptance in writing of a part of a proposition could be regarded as an acceptance of the whole. In such a case, whatever the rights of the plaintiff might be in a suit upon the *quantum meruit,* he has no right of action upon the contract itself.

The demurrer to the petition is sustained.

*O. P. Mason,* for plaintiff.

*E. W. Thomas,* for defendants.